## Fisher et al. *v.* Duquesne Brewing Company of Pittsburgh, Appellant.

Argued April 24, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*D. H. McConnell,* for appellant.

*James A. Wright,* with him *George Raskin,* for appellees.

OPINION BY CUNNINGHAM, J., September 30, 1936:

Plaintiffs, a father and his minor son, have verdicts and judgments thereon, for $688 and $2,000, respectively, as damages for personal injuries suffered by the son when a sled upon which he was riding collided with a truck owned by the defendant and driven by one of its servants. These appeals from the separate judgments may be disposed of in one opinion; they are based upon the refusal of the court below to grant defendant's motion for judgment in its favor upon the whole record.

These facts were not controverted at the trial: The accident occurred shortly after eight o'clock on the evening of December 30, 1933, at the corner of Justus Avenue and North Chestnut Street in the Borough of Carnegie, Allegheny County, and as the minor plaintiff, Cary Fisher, Jr., then fourteen years of age, was coasting down Justus Avenue on a borrowed sled and the driver of appellant's truck was coming up the hill and making a left turn from that avenue into North Chestnut Street. Justus Avenue is paved and is 21½ feet from curb to curb; it extends in a straight line and in a northerly direction, at a gently descending grade, from its intersection with Suder Street to Bell Avenue, a distance of about 1,000 feet. About 350 feet below Suder Street, Justus Avenue is intersected from the east, but not crossed, by North Chestnut Street, a cinder street 24 feet in width. In this distance there were three electric street lights erected over the cartway—one of them at the corner of the intersection. Appellant's five-ton truck was proceeding up the right-hand side of Justus Avenue with the driver and a police officer on the seat and the driver's helper standing on the right running board. When he reached North Chestnut Street, some 650 feet above Bell Avenue, the driver, without stopping, made a left turn to go into North Chestnut Street. At that moment

the minor plaintiff was coming down his right hand side of Justus Avenue on his sled. He "spragged" his sled with his foot, as he expressed it, in an effort to turn to his left and pass behind the truck, but the sled turned all the way around and continued down the hill backwards until it was caught by the right rear wheel of the truck and drawn into the mouth of North Chestnut Street. The minor's injuries were serious and no complaint is made about the amounts of the verdicts.

With this general description of the accident, we turn to an examination of the contention of counsel for appellant that its point for binding instructions should have been affirmed by the trial judge, or its subsequent motion for judgment in its favor, n. o. v., granted by the court, in banc. The proposition is based upon two grounds: (a) There was no evidence justifying the submission to the jury of the question of negligence upon the part of appellant's driver; and (b) in any event, the minor plaintiff was guilty of contributory negligence as a matter of law.

When the record is read in the light most favorable to plaintiffs, there was evidence from which a jury could reasonably find these additional facts and surrounding circumstances. For a number of years Justus Avenue was a customary coasting place and occasionally had been roped off for that purpose, but not within three or four years prior to the accident. The driver of appellant's truck lived in Carnegie and had been driving a team or truck in that borough for approximately twenty years. As the truck was coming up Bell Avenue, shortly before the accident, it passed coasters on that avenue near the foot of Justus, and people were sledding on the lower part of the latter. The head lamps upon appellant's truck were defective, in that they did not give the driver a vision of 160 feet under normal atmospheric conditions. See Act of May

1, 1929, P. L. 905, 953, 75 PS §353. The defective head lamps, however, did not prevent the minor plaintiff from having full knowledge that a truck was coming up the hill. He testified that when he started down he saw the truck coming up at a distance of approximately 600 feet below his starting point and about 240 feet below the intersection at North Chestnut Street. The dimness of the truck lights was, however, one of the matters its driver was bound to take into consideration when about to make his left turn.

Under the conditions existing at the time of the accident with respect to street lighting and weather, it was quite possible to see a sled of the kind used by the minor plaintiff at a distance of from 100 to 200 feet. The only accurate evidence concerning the speed of the truck is that it was coming up the hill in second gear and at a rate of approximately seven miles an hour.

The minor plaintiff's account of the accident reads: "Q. Where was this truck coming up, what side of the street was it coming up? A. It was on his right-hand side. Q. How close was it coming to the curbstone? A. About six feet. ...... Q. Do you know whether or not the street is wide enough for you to pass this truck? A. Yes, sir. Q. Did you pull out—that you could pass the truck? A. Yes, sir. Q. Did you or didn't you continue to look down the street as you went down the hill? A. I continued to watch the truck. ...... Q. Now, did you have any knowledge or anything to indicate to you that the truck was going to turn before it made the left turn? A. No, sir. Q. What was your idea of the progress of the truck? A. I thought it was pulling over so I could pass. Q. Did you have room enough to pass? A. Yes, sir. ...... Q. How far were you from the upper curbstone of [Chestnut Street] to the best of your recollection when the truck made this first motion to make a left turn? A. About 30 feet.

...... Q. How close were you from that curbstone? A. Five or six feet. ...... Q. Now, did the truck stop before making a left turn or did it continue in its course without stopping? A. It continued without stopping. Q. What did the truck do then after you have indicated it started to make the left turn: what did it do? A. It swung out and completely blocked the street. ...... Q. What did you do when you saw the truck was going to turn to the left? A. I spragged my foot and turned my sled to the left. Q. What was your idea of turning to your left? A. To pass the truck at the rear end. Q. Had you any opportunity to pass the front end as it struck your judgment at that time? A. No. Q. When you turned your sled around to the left and spragged your sled, what happened to your sled? A. It turned around and started down the hill backwards. Q. Where was your sled with reference to the intersection there, to the curbline when it was finally struck by the truck? A. About four or five feet from the curbline. Q. That is out into Justus Avenue? A. Yes, sir. ...... Q. What portion of the truck struck your sled? A. The rear right wheel. ...... Q. And then what happened—did the truck immediately stop or not after hitting you? A. It kept on going. Q. What happened to you. A. It dragged me into the mouth of North Chestnut. ...... Q. Could you notice any of the occupants of the truck when they were swaying over in front of you? A. The only one I could notice, he was on the running board. ...... Q. Could you notice anything about the positions of his head and shoulders? A. They were in the cab. Q. In the cab window? A. Yes, sir. Q. Where were his feet? A. They were out on the running board. Q. Did the truck driver at any time before he finally stopped give any indication he had seen you? A. No, sir. Q. Was there any horn blown? A. No. Q. At any time? A. No. Q. What happened immediately

before the truck stopped—when could you judge that the driver first knew that he had hit you? A. When I yelled. Q. When you yelled, then what happened? A. The man on the running board hollered, 'Stop'."

In any view of the testimony this is not a "darting out" case, nor is it one of those sledding cases in which a collision occurs between a coaster and a vehicle approaching each other at right angles, such as *Eastburn v. U. S. Express Co.*, 225 Pa. 33, 73 A. 977; *Wetherill et al., v. Showell Fryer & Co., Inc.*, 264 Pa. 449, 107 A. 808; *Kovalchik et al., v. Demo*, 94 Pa. Superior Ct. 167; and *Siglin et ux. v. Haiges*, 95 Pa. Superior Ct. 588. The general ground upon which recovery was denied in those cases was that there was no evidence that the driver of the vehicle saw, or could have seen, the sled in time to prevent the accident. On the other hand, *Yeager v. Gately & Fitzgerald, Inc.*, 262 Pa. 466, 106 A. 76, is a case where, although the collision occurred between the sled and the truck as they approached at right angles, there was evidence that the driver of the truck had knowledge that children were coasting at the intersection and could have seen the child when his truck was at least 50 feet from the crossing; a recovery was therefore sustained. The cases of *Leslie v. Cantanzaro*, 272 Pa. 419, 116 A. 504, and *Stickler v. Cantanzaro*, 86 Pa. Superior Ct. 63, while not involving a right angle collision may readily be distinguished from the one now at bar. In the cases last cited the collision occurred when the defendant turned his automobile toward the left side of the roadway in order to pass around an obstruction composed of building materials and the plaintiffs came around a turn in the street on their sled. In the *Leslie* case it was said: "There was no clear evidence defendant was aware that coasters might be met upon the highway. ...... Any knowledge of such a usage was denied by defendant, and we are not satisfied that the evidence

was so convincing as to justify a jury in saying that the driver on the highway must have been aware of this situation, and therefore had imposed on him the duty of taking unusual care, in view of the possibility of meeting those who might be coasting."

The case of *Post v. Richardson,* 273 Pa. 56, 116 A. 531, is also distinguishable; Justus Avenue was perfectly straight, whereas in the case cited the accident happened on a curve. It is important to bear in mind here that appellant's driver was making a left-hand turn on a two-way street, which of necessity meant passing across the line of any oncoming traffic. It is the duty of one about to make such a left turn to wait until it is possible for him to see he may do so with safety: *Rossheim v. Bornot, Inc.,* 310 Pa. 154, 165 A. 27.

Probably the case of *Idell v. Day,* 273 Pa. 34, 116 A. 506, is the authority most nearly in point here. There the defendant was driving his car on the right-hand side of the road and suddenly veered over toward the left. His explanation was that the shadows on the street resembled people and he was trying to avoid striking them. The plaintiffs were riding on a sled which was coming toward the defendant and when the latter went over to the left they collided. The language of the present Chief Justice in that case is helpful here. He said:

"We have had several cases before us of right angle collisions between sleds and vehicles; as to such circumstances, where there is no testimony to justify a finding that a driver knew or had reasonable ground for knowing boys were sledding, or likely to be sledding, on a hill at the time of passing, and a sled, not under control, comes rapidly, without warning or opportunity to apprehend its approach, and a collision takes place, there is no liability for damages to children who may be injured, as was the case in *Eastburn v. United States Express Co.,* 225 Pa. 33, 35, [supra]; but where a driver could see children at least fifty feet

away from the crossing, or knew they were riding on the hill, he is required to give warning of his approach and take other reasonable means to guard against accident, consistent with the circumstances: *Yeager v. Gately & Fitzgerald, Inc.*, 262 Pa. 466, 471, [supra].

· "Here we have an accident between crossings, where the driver deliberately passes to the wrong side of the street, immediately in the face of impending traffic. The speed of the car did not cause the accident; while the sled was not in a fixed position, the accident was bound to result when the car was turned directly in front of it within a few feet of its approach. It would have happened to any vehicle travelling in the same direction as the sled, under the circumstances here detailed. ......" See also a collection of cases cited in the note at 20 A. L. R. 1433.

Under the testimony in this case, a jury could reasonably find that appellant's driver, if he had looked, could have seen the minor plaintiff on his sled when the latter was more than 100 feet above the point at which the driver was about to turn to his left and across the path of any traffic which might be approaching, and that the driver did not perform the duty then resting upon him of waiting until he could make the turn with safety. It could also find that the driver's view up Justus Avenue was obstructed by the manner in which he permitted his helper to stand on the running board of the truck, with his head and shoulders inside the cab.

We have indicated the degree of care imposed upon every driver about to make a left turn across traffic. If appellant's driver should have known, under all the circumstances disclosed in the testimony, that he would probably find coasters on Justus Avenue, greater vigilance and an even higher degree of care would be demanded of him.

He denied having seen other coasters on Bell Avenue

and the lower part of Justus; this made the question of the extent and character of his notice, relative to the presence of coasters that night, one of fact for the jury.

But even if that issue be resolved in favor of the appellant, we think it would still be for the jury to say whether, under all the lighting conditions as they then existed, and particularly with defective headlights and with his helper standing on the running board, its driver was negligent in not waiting to permit a coaster, whom he could have seen at a considerable distance, to pass on down the hill.

In our opinion, the question of the minor plaintiff's alleged contributory negligence was also for the jury. In *Idell v. Day,* supra, it was said, (p. 37) : "Coasting on a public street which is not put to extended public use, and not expressly prohibited by ordinance, is not necessarily a nuisance, nor is it an unlawful act or negligence per se: *Burford v. City of Grand Rapids,* 53 Mich. 98, 103; *Faulkner v. City of Aurora,* 85 Ind. 130, 133; *Lynch v. Public Service Corporation,* 82 N. J. L. 712, 715; *Farrington v. Cheponis,* 84 Conn. 1, 8; *Feldman v. Riccordino,* 58 Pa. Superior Ct. 114, 117. Where, under the undisputed facts, coasting upon a street is clearly and manifestly dangerous, it may be the duty of the court to so declare as a matter of law, but, where the evidence is conflicting, and the inferences to be drawn are not clear, the question whether plaintiff has exercised care and diligence to avoid danger while coasting, such as to be expected of a reasonably careful and prudent man under like circumstances, is for the jury; *Meyers v. Central R. R. of N. J.,* 218 Pa. 305-6."

Although young Fisher was bound to know that the truck might be driven across his path and into Chestnut Street, he had a right to assume such a turn would not be made suddenly or without the exercise of due care upon the part of the driver.

Upon a review of the whole record, we are unable to sustain appellant's single assignment of error upon either of the grounds submitted in its behalf.

Judgments severally affirmed.