**Anthony KUDIRKA, Plaintiff,**

v.

**Earl FAIRMAN, Defendant.**

**Civ. A. 4949.**

United States District Court
M. D. Pennsylvania.
June 21, 1957.

Warren, Hill, Henkelman & McMenamin, Scranton, Pa., Paul R. Selecky, Wilkes-Barre, Pa., for plaintiff.

Fahey & Casper, Wilkes-Barre, Pa., for defendant.

WATSON, District Judge.

The plaintiff, Anthony Kudirka, instituted this action to recover damages for injuries received in a motor vehicle col-

lision which, he alleges, was caused by the negligence of defendant Earl Fairman.

The case was tried before the Court without a jury. From the legal evidence and the stipulation filed the Court makes the following

Findings of Fact

1. Shortly before midnight on February 5, 1954, Anthony Kudirka, the plaintiff, was operating a 1952 International truck in an easterly direction upon a three-lane public highway near Berwick, Pennsylvania, known as United States Route 11.

2. Earl Fairman, the defendant, was operating a motor vehicle in the opposite direction upon the same highway.

3. The vehicles operated by plaintiff and by defendant collided on the southerly side of Route 11 at or near the point of intersection of Route 11 and Pennsylvania Legislative Route 19117. Route 19117 intersects Route 11 at an angle of approximately forty-five (45) degrees and runs generally in a northeast to southwest direction.

4. At the time of the collision the weather was clear and the surface of the road was dry.

5. Immediately prior to the collision, defendant attempted to make a left turn from Route 11 into Route 19117. He had almost completed the turn when his vehicle was struck by the vehicle operated by Kudirka.

6. Kudirka was unable to avoid the collision despite his violent effort to do so.

7. Immediately prior to the accident, Fairman was proceeding at a speed of approximately ten (10) miles per hour and Kudirka was traveling at a speed of approximately forty (40) miles per hour.

8. Fairman turned across the highway when such movement could not be made in safety because of the approaching vehicle operated by Kudirka.

9. Earl Fairman was negligent in the operation of his motor vehicle at the time of and just prior to the accident and that negligence was the proximate cause of the collision and resulting injuries and damages to the plaintiff, Anthony Kudirka.

10. Anthony Kudirka was not negligent in the operation of his motor vehicle.

11. As a result of said collision, Anthony Kudirka suffered extensive and serious injuries including a fracture of the femur of the left leg, fracture of the left mandible, deep chin laceration, other lacerations and abrasions, contusions and thrombophlebitis which later developed from the aforementioned injuries. Said injuries required hospitalization of plaintiff in the Berwick Hospital, Berwick, Pennsylvania, and in the Geisinger Memorial Hospital, Danville, Pennsylvania. Additional hospitalization of plaintiff was required in Johns Hopkins Hospital, Baltimore, Maryland, where plaintiff underwent an operation for the removal of a mass from his left knee.

12. As a result of the medical and surgical treatment and the hospitalization occasioned by the injuries incurred in the collision, Anthony Kudirka incurred expenses in the sum of Two Thousand Three Hundred Twenty and fifty-four one hundredths ($2,320.54) Dollars.

13. As a result of said collision Anthony Kudirka was unable to work for a period of sixty-one (61) weeks and he suffered a total loss of wages in the sum of Seven Thousand Six Hundred twenty-five ($7,625) Dollars. Prior to the accident Kudirka earned an average of One Hundred twenty-five ($125) Dollars per week.

14. Plaintiff suffered damages in the sum of One Hundred Fifty ($150) Dollars as a result of the destruction of his clothing and damages of Eight Hundred Fifty ($850) Dollars which represented the cost of repairs to his vehicle.

15. As a result of said accident, plaintiff underwent great pain and suffering.

16. The sum of Two Thousand Five Hundred ($2,500) Dollars is fair compensation for the pain and suffering

which plaintiff has undergone as a result of the injuries incurred in said accident.

## Discussion

This lawsuit arises out of a motor vehicle collision which occurred on United States Route 11 near Berwick, Pennsylvania, on or about midnight, February 5, 1954. The plaintiff, Anthony Kudirka, was traveling east on U. S. Route 11 and, as he approached the intersection of Route 11 and Route 19117, Earl Fairman was proceeding west upon the same highway. Fairman attempted to negotiate a left turn from Route 11 into Route 19117 which took him across the path of the oncoming Kudirka vehicle. Fairman was unable to complete the turn successfully and their vehicles collided at a point on the southerly side of Route 11. Kudirka and Fairman were seriously injured in the accident and both men required various surgical operations and long periods of hospitalization.

The evidence offered at the trial was, in some respects, contradictory, but it is apparent that the defendant was negligent in the operation of his vehicle and that that negligence was the proximate cause of the collision.

Fairman testified that, when he approached the intersection, he was traveling in the center lane of the highway. He stated that he had indicated with his turn signals that he was preparing to make a left turn and that he then proceeded across the south lane at a slow rate of speed. He testified further that he believed that he could make the turn in safety. There was no contradictory evidence offered on this point.

Kudirka testified that he was traveling at a speed of approximately forty (40) miles per hour when he approached the intersection, and he further testified that he was unable to state with certainty whether or not Fairman's turn signals were operating at that time.

The Pennsylvania Motor Vehicle Code, 75 Purdon's Penna. Statutes Annotated § 571(a), requires that

"The driver of any vehicle upon a highway, before starting, stopping or turning from a direct line, shall first see that such movement can be made in safety, and, if any pedestrian may be affected by such movement, shall give a clearly audible signal by sounding the horn, and whenever the operation of any other vehicle approaching or following may be affected by such movement, shall give a signal, as required in this section, plainly visible to the driver of such other vehicle of the intention to make such movement."

Section 572(b) of the Code provides that

"The driver of a vehicle, street car, or trackless trolley omnibus, approaching but not having entered an intersection, shall yield the right of way to a vehicle within such intersection or turning therein to the left across the line of travel of such first mentioned vehicle, provided the driver of the vehicle turning left has given a plainly visible signal of intention to turn as required in this act.

█ If we assume, arguendo, that Fairman had placed his turn signals in operation which indicated " * * * a plainly visible signal of intention * * " to make a left turn, then Fairman has satisfied part of the requirements set forth in the Code. However, Fairman had a duty, under the Code, to see that "* * * such movement * * * be made in safety * * *" (Emphasis supplied.) The Court believes that Fairman ignored this fundamental principle. The Code does not relieve a motorist of his obligation to drive safely. It is inconceivable that a motorist, merely by indicating an intention to turn, may endanger lives and property. Signals were not designed to serve as a substitute for sound driving practices and it is apparent that Fairman's maneuver was the proximate cause of the unfortunate collision.

Fairman contends that Kudirka should have seen his signal and, thereupon, should have permitted him to make the turn. However, the Code requires, as we have stated above, that the operator

assure himself that the turn contemplated can be made in safety, and whether or not a turn can be made in safety depends upon many factors. It is obvious that driving becomes more hazardous after darkness has fallen and, very often, a maneuver, which, in daylight, could have been made in safety, becomes highly dangerous when vision is impaired by darkness and it is incumbent upon the operator of a motor vehicle to adjust his driving habits to meet changing conditions. It is apparent that Fairman failed to make such adjustment and, as a result, an accident occurred.

One of the leading cases involving a situation such as we have in this action is Dubrock v. Interstate Motor Freight System, 3 Cir., 1944, 143 F.2d 304, certiorari denied 323 U.S. 765, 65 S.Ct. 119, 89 L.Ed. 613. See also Peters v. Shear, 1945, 351 Pa. 521, 41 A.2d 556. In that case it was held that it was for the jury to decide whether or not it was negligence for a motorist to attempt a left turn at twenty miles per hour in the face of an oncoming truck over 100 feet distant traveling at 40 miles per hour. The Court adopted that position even though Sections 571 and 572 of the Pennsylvania Motor Vehicle Code were applicable. It is apparent, therefore, that blind compliance with these sections of the Code will not, of itself, relieve the operator of a motor vehicle of liability for the consequences should his negligence result in injury to the person or the property of another.

### Conclusions of Law

1. In this case, it is for the Court, the finder of the facts, to determine from the evidence whether or not Fairman was negligent in attempting the left turn across the path of the oncoming vehicle operated by Anthony Kudirka.

2. It was the duty of Fairman, before turning across the highway to his left, to see that such movement could be made in safety.

3. The counterclaim of Earl Fairman against Anthony Kudirka should be dismissed.

4. The plaintiff, Anthony Kudirka, is entitled to judgment against the defendant, Earl Fairman, in the sum of Thirteen Thousand Four Hundred Forty-five and Fifty-four One-Hundredths ($13,-445.54) Dollars.

5. An appropriate order will be entered.