**Theckla B. WEBB, Plaintiff,**

**v.**

**Lloyd K. MARTIN, Administrator of the Estate of Jason A. Martin, Deceased, Defendant and Third-Party Plaintiff,**

**v.**

**Carl C. STALCUP, Third-Party Defendant and Counterclaimant.**

**Civ. A. No. 7645.**

United States District Court
M. D. Pennsylvania.

Nov. 24, 1965.

Joseph M. McDade, James M. Howley, Scranton, Pa., Schaeffer, Purcell & Clouser, Harrisburg, Pa., Henry B. Fitzpatrick, Jr., of Broderick, Schubert & Fitzpatrick, Philadelphia, Pa., for plaintiff.

Liverant & Stewart, York, Pa., for defendant and third party plaintiff.

John A. Roe, Hurwitz, Klein, Meyers & Benjamin, Harrisburg, Pa., for third party defendant.

Nissley, Cleckner & Fearen, Harrisburg, Pa., for counterclaimant.

FOLLMER, District Judge.

This case was tried to the Court and without a jury. From the testimony, the

briefs and arguments of counsel, the Court makes the following:

### FINDINGS OF FACT

1. At the time of the institution of this action plaintiff was a citizen of the State of Maryland; defendant and third-party plaintiff, Jason A. Martin, for whom defendant, Lloyd K. Martin, Administrator, was substituted after the death of Jason A. Martin on March 31, 1962, was a citizen of the Commonwealth of Pennsylvania; and third-party defendant and counterclaimant, Carl C. Stalcup, was a citizen of the District of Columbia.

2. On July 7, 1960 at approximately 6:00 o'clock P.M. (E.D.S.T.), plaintiff was a passenger in the right front seat of the 1955 Chevrolet automobile which at that time was owned and operated by Carl C. Stalcup, third-party defendant.

3. Immediately preceding the accident Stalcup was operating his automobile in a northerly direction on U.S. Route 11 at a point approximately two and one-half miles north of Greencastle, Pennsylvania.

4. Immediately preceding the accident Jason A. Martin was operating a 1955 Ford Thunderbird in a southerly direction on U.S. Route 11 at a point approximately two and one-half miles north of Greencastle, Pennsylvania.

5. On July 7, 1960 at approximately 6:00 o'clock P.M. (E.D.S.T.), an automobile accident occurred involving the aforesaid Chevrolet and Thunderbird on U.S. Route 11 in the area described in Paragraphs 3 and 4 supra.

6. On the west side of the highway at the point hereinabove described is the Castle Motel which is served by semi-circular driveway which enters the western side of U.S. Route 11 at two places.

7. At the point in question U.S. Route 11 is a three lane concrete highway running north and south, each lane being eleven feet in width.

8. At the time and place aforesaid, the day was light and clear and the road surface was dry.

9. At the point in question the posted speed limit for passenger vehicles was 50 miles per hour.

10. As Stalcup approached a point on the highway opposite the Castle Motel he made a left turn from the northbound lane across the center and southbound lanes intending to enter the northernmost of the driveways to the motel.

11. The impact, which was between the front of the Martin Thunderbird and the Stalcup Chevrolet, occurred almost immediately after Stalcup turned to his left and was in the southbound (Martin's) traffic lane approximately 7 feet east of the western edge of the highway and at the northern entrance to the motel.

12. Mrs. D. E. Brakefield was operating a car in a northerly direction on U.S. Route 11 immediately behind Stalcup and was almost even with the scene of the accident and just about opposite the entrance to the motel which Stalcup was turning into.

13. Mrs. Brakefield was the witness in the best position to see the events immediately preceding the accident.

14. At the point of the accident the highway is straight and level and with vision approximately two or three miles in each direction.

15. Stalcup had his left signal light on when in the northbound lane, he continued moving (without stopping) after beginning his turn and did not see the Martin Thunderbird until he was in the left lane (southbound) of traffic.

16. There is no convincing evidence that the Martin Thunderbird was traveling beyond the allowable speed limit or that if it were, its speed was a proximate cause of the accident.

17. The Martin Thunderbird skidded a distance of only 30½ feet prior to the impact and had attempted to avoid hitting the Chevrolet by turning to its left.

18. Stalcup's turn was sudden and without warning and at an unsafe time and at a time when Martin could not take action to avoid the collision.

19. Stalcup's movement into and across the southbound lane of traffic could not have been made in safety because of the approaching Thunderbird operated by Martin.

20. Martin was unable to avoid the collision despite his obvious effort to do so.

21. Carl C. Stalcup was negligent in the operation of his Chevrolet automobile at the time of and just prior to the accident and that negligence was the proximate cause of the collision and the resulting injuries and damages to the plaintiff and himself.

22. Jason A. Martin was not negligent in the operation of his motor vehicle.

23. By Stipulation of the parties, Lloyd K. Martin was dropped as a party defendant in his individual capacity.

## DISCUSSION

Plaintiff based her claim of liability on the testimony of three witnesses, Donato, Mrs. Donato and Stalcup. Plaintiff testified that she had no recollection of the facts surrounding the accident.

Donato is the owner and operator of the Castle Motel. He testified that he was sitting on the patio of the motel on the afternoon of the accident; that he noticed the Stalcup automobile come to a stop opposite the motel; that he left the patio to walk towards the highway; that he saw nothing coming and motioned to Stalcup to come on; that no automobiles passed Stalcup while he was stopped in the northbound lane of U.S. Route 11. This was in direct conflict with the testimony of his wife, of Stalcup and of Mrs. Brakefield, hereinafter referred to. He then testified that as the Stalcup car was turning across the center and southbound lanes he saw the Martin car 300 feet to 400 feet to the north. Later on cross-examination he said that he had judged the distance by two trees to the north, that the trees were about 10 feet apart. By plaintiff's own measurement they are 222 feet apart. His testimony

in this regard was completely confused. Although he testified that he saw no car approaching from either direction when he signaled to Stalcup to come on, it developed that in a prior statement he had indicated that the Martin vehicle was only fifty yards north of the driveway as the Stalcup car pulled into the southbound lane. He contradicted Mrs. Brakefield, State Trooper Wilson, and even himself, in placing the accident in his driveway rather than on the traveled portion of the highway.

Donato testified that the Martin car at the time of the accident was traveling "at 65 miles or better". Shortly after the accident and when his recollection was closest in time to the happening of the accident, he gave a statement in which he estimated the speed of the Martin car to be approximately 50 miles per hour. At the criminal trial in Franklin County he estimated the speed of the Martin car to be between 50 and 60 miles per hour. Donato's testimony is completely unreliable.

Mrs. Donato testified that she was at work in her kitchen, she looked out and saw the Stalcup car slowing down in the northbound traffic lane, that at least one car passed the Stalcup car (her husband had testified that none had passed), that she saw the collision. She placed part of the Stalcup car in the motel driveway.

Both of the Donatos left the unescapable impression that they were endeavoring to slant their testimony in a way to assist plaintiff.

Plaintiff's third liability witness was Stalcup. Certainly as third-party defendant and counterclaimant he was a very much interested party. At the time of the accident Stalcup stated to the investigating officer that he had not seen the Martin car until he was very close and he then tried to give his car more gas to get off of the highway. At the trial he had no recollection of this interview and testified that before crossing the highway he looked both ways and saw the Martin car 500 feet or more to

the north. His testimony is not only contradictory but is totally unconvincing.

As to the testimony offered by defendant, Mrs. Brakefield was one of the most impressive witnesses this Court has ever heard. She was poised and sure of herself; her testimony was lucid, forthright and totally impartial. A rigid cross-examination failed to make a dint in her testimony.

Mrs. Brakefield testified that she was traveling north on Route 11 and that there were several cars between her and Stalcup, who was ahead as they approached the motel. She testified that Stalcup was in the northbound or easternmost lane and put on his turn signal. The intervening automobiles passed Stalcup and "When we reached opposite the motel * * * I was immediately behind the car". She indicated that the occupants of the Stalcup car were looking back at the entrance of the motel or the entrance to the driveway of the motel immediately before turning, and that the turn was made by Stalcup almost as soon as all of the automobiles which had overtaken him had gotten past. Mrs. Brakefield testified there was an immediate sound of the brakes from the southbound lane following Stalcup's turn. She emphasized that "It was awfully immediate". She then testified that when he (Stalcup) did turn, it was immediately evident that there was going to be an accident. At this point the Court asked "You say immediate to what?" to which she answered "As he turned.", which clearly indicates that the Martin vehicle was in such close proximity to the nothern driveway of the motel that Stalcup's turn was of necessity at a time when it was unsafe to make such a turn.

Mrs. Brakefield frankly testified that she did not see the Martin car until the approximate time of impact. She emphasized on cross-examination that Stalcup had been looking to his left rear just prior to turning. She further emphasized on cross-examination that the impact occurred not in the driveway as plaintiff attempted to prove, but "At the time of the impact the Stalcup car was on the highway."

Defendant's third liability witness was State Trooper Wilson, who identified photographs, described the road, the weather, and the debris on the road caused by the accident; also as to the statement of Stalcup which he took at the hospital shortly after the accident.

The Pennsylvania Motor Vehicle Code states, inter alia: (75 P.S. § 1012(a))

"(a) The driver of any vehicle upon a highway, before starting, stopping or turning from a direct line, shall first see that such movement can be made in safety, * * * and whenever the operation of any other vehicle approaching or following may be affected by such movement, shall give a signal, as required in this section, plainly visible to the driver of such other vehicle of the intention to make such movement."

[1] There can be no question as to Stalcup's responsibility under the circumstances. In Fisher et al. v. Duquesne Brewing Company of Pittsburgh, 123 Pa. Super. 208, 215, 187 A. 90, 93 (1936), where a truck turned across the oncoming lane and struck a boy on a sled, the Court said:

"* * * It is important to bear in mind here that appellant's driver was making a left-hand turn on a two-way street, which of necessity meant passing across the line of any oncoming traffic. It is the duty of one about to make such a left turn to wait until it is possible for him to see he may do so with safety. Rossheim v. Bornot, Inc., 310 Pa. 154, 165 A. 27."

See also, Seckinger v. Economy Laundry, Inc., 133 Pa.Super. 414, 3 A.2d 46 (1938); Kerr v. Augustine Construction Company, Inc., 158 Pa.Super. 576, 45 A.2d 913 (1946); Kudirka v. Fairman, D.C.M.D.Pa., 152 F.Supp. 120 (1957); Dubrock v. Interstate Motor Freight System, 3 Cir., 143 F.2d 304 (1944).

This accident occurred July 7, 1960. Jason A. Martin died March 31,

1962 from causes unrelated to this accident. There is, therefore, a presumption of due care on his part. Morin v. Kreidt, 310 Pa. 90, 164 A. 799 (1933); see also, Lear v. Shirk's Motor Express Corporation, 397 Pa. 144, 152 A.2d 883 (1959).

 Martin had no duty to anticipate the negligence of Stalcup, particularly involving, as it did here, a clear violation of the Pennsylvania Motor Vehicle Code, supra. Idlette v. Tracey, 407 Pa. 278, 180 A.2d 37 (1962); see also, Lieb v. Wawa Dairy Farms, 129 Pa.Super. 70, 194 A. 758 (1937).

In the light of the convincing testimony of Mrs. Brakefield, this would seem to be a clear case for the application of the sudden emergency doctrine.

In Todd et al. v. Nesta, 305 Pa. 280, 287, 157 A. 678, 680 (1931), the Court (quoting from Amey v. Erb, 296 Pa. 561, 146 A. 141) said: " 'Where one finds himself in a position of danger, which is not the result of his negligence, he is not responsible if he make a mistake of judgment in getting out. An honest exercise of judgment is all that is required of him, even if he could have done better if he had had time to deliberate.' "

## CONCLUSIONS OF LAW

1. Carl C. Stalcup, third-party defendant, was negligent in suddenly and without warning turning across U.S. Route 11 at a time when it was unsafe to do so and that such negligence was the proximate cause of the ensuing collision and the injuries sustained by himself and Theckla B. Webb, plaintiff, in that collision.

2. The decedent, Jason A. Martin, was not guilty of negligence which was a proximate cause of the collision and the injuries that resulted therefrom.

3. The sole proximate cause in fact and law of the subject accident was the negligent conduct of Carl C. Stalcup in turning when an accident was inevitable.

4. Judgment will be entered for defendant, Lloyd K. Martin, Administrator of the Estate of Jason A. Martin, Deceased.

5. Judgment will be entered in favor of defendant, Lloyd K. Martin, Administrator of the Estate of Jason A. Martin, Deceased, on counterclaim of Carl C. Stalcup v. Lloyd K. Martin, Administrator of the Estate of Jason A. Martin, Deceased.