## Todd et al. *v.* Nesta, Appellant.

Argued October 7, 1931. Before FRAZER, C. J., WALL-ING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*John Duggan, Jr.,* with him *Levy, Crone & Berger,* for appellant.—For the purpose of disposing of the motion for judgment, all evidence facts and inferences fairly arising therefrom favorable to plaintiff must be taken as true, and all unfavorable to him, if depending solely upon testimony, must be rejected: Wiles v. Emer-

son-Brantingham Co., 267 Pa. 47; Stone v. Phila., 302 Pa. 340, tends to support the proposition here advanced.

The case is in line with numerous decisions which hold that, although drivers may have the right of way, they are not permitted to drive reckless or careless, but must take whatever reasonable precaution may be necessary to avoid a collision: Curry v. Willson, 301 Pa. 467.

*Robbin B. Wolf*, of *McCreery & Wolf*, for appellees.— The fact being disputed the question as to what was reasonable care under the circumtsances was clearly for the jury: Amey v. Erb, 296 Pa. 561; Scott v. Erie City, 297 Pa. 344; Frank v. Cohen, 288 Pa. 221; Leslie v. Cantanzaro, 272 Pa. 419.

OPINION BY MR. JUSTICE DREW, November 23, 1931:

Appellant has limited this case to a single question, viz.: Should the court below have set aside the verdicts on the sole ground of contributory negligence on the part of the minor appellee?

The action is in trespass for damages for personal injuries sustained by a minor as a result of a collision between a truck driven by him and one owned and operated by appellant. Verdicts were returned for the minor and his parents.

The accident happened on the morning of December 28, 1927, about two o'clock, on the Boulevard of the Allies, near the north end of the present Liberty Bridge, close to Grant Street, Pittsburgh. This boulevard is forty feet in width, and runs substantially east and west, with its south side toward the Monongahela River, and its north side, near the place of the accident, along property of Duquesne University. There are no intersecting streets in the vicinity. It was a dark, foggy or smoky night. The surface of the boulevard there was covered with ice. The minor appellee was proceeding westwardly on the north side of the boulevard and on a down grade, toward Grant Street, and collided with a tow

truck of appellant. The tow truck was present at the scene of another accident, and the driver was attempting to tow a wrecked car from the boulevard. He had coupled the tow car back to back to the damaged car, the tow car facing east and the damaged car facing west, and both were on the south side of the boulevard. Several attempts had failed to pull the damaged car out of its position because of the rising grade and poor traction on the icy surface of the boulevard, and appellant's driver decided to attempt to turn around and go down the boulevard. With the two cars coupled together, this operation required several movements forward and backward. While this was being done, the minor appellee approached the scene, on the opposite side of the boulevard, driving a large truck, and his testimony of what then happened is as follows:

"I was running between twenty and twenty-five miles an hour. ...... When I was about two hundred feet away from the lower end of that bridge I saw a pair of headlights sitting sort of at an angle and I blew my horn and started to slow up a little bit and then there was some red lanterns on the bridge. They were working on it at the time and then I released the brakes and kept going on down. I thought some one had stopped to look at the bridge and I kept coming down the boulevard. ...... The next thing I saw was that these lights were moving. ...... When I saw these lights moving to my side naturally I blew my horn because I figured he would stop until I got through, and when I blew the horn he did stop and then I released the brake again and I would say I was running around twenty miles an hour at that time and just as I started to go down there, I would say when I was within about fifty feet, he shot out real quick and when he did, there was a Star coupé tied on back of the thing and the wrecker was completely on my side of the road and part of the car on my side of the street, and the only thing any one could do was stop. I put on my brake. I had plenty of brake, but as I did

that, my truck swerved sideways down the boulevard right into them. ...... When he started toward my side of the road I decided to go around on the other side, and when he pulled out I discovered the other car on the back and I saw I couldn't do that so I naturally made for my own side and I swung the truck—I had to try to keep from running into them and when I did that, the rear end of my truck swung around and just as it got around square, why, it hit."

This description of the accident is substantially corroborated by the testimony of Coen and McFeatters, eyewitnesses of the accident. It was their car which was being towed, and they were interested spectators of what happened at that time.

The negligence of appellant's driver is admitted, it was so gross it cannot be disputed. It was the proximate cause of the accident. He closed his eyes to the conditions on the ground, the dark night, the grade and icy condition of the boulevard, and traffic approaching from the opposite direction. By suddenly occupying the whole boulevard without notice he compelled the happening of this accident.

When the appellee approached the point of collision, he did not know that the surface of the boulevard there was covered with ice; he did not know anything of the business which engaged appellant's driver there; he did not know that a second car was in tow; he did not know appellant's driver intended to cross the center line. He was under no duty to anticipate that a car on the opposite side of the boulevard, facing in the direction opposite to that in which he was traveling, would be suddenly operated in a turning movement to the other side of the boulevard and across his pathway. He did not know that appellant's driver, having come to a stop in apparent response to his horn, would start his car up again and cross his pathway. On these facts and the fair inferences to be drawn from them, the case was submitted and the jury found verdicts in favor of plain-

tiffs, the minor appellee and his parents. There is ample testimony to support the verdicts. The learned court below could not have found as a matter of law that the minor appellee was guilty of contributory negligence. The question of what was reasonable care under the circumstances was for the jury.

We cannot agree that the minor appellee should have apprehended the unusual conditions which appeared on the boulevard immediately prior to the accident. He had driven over the same place some hours before, at which time there was no ice on the boulevard. He was returning with a heavy load, and when he saw the headlights of the car on the opposite side of the boulevard, even though the car was stopped, it was no notice to him that that car was about to cross the center line immediately in front of his truck. The red lights which he saw upon the Liberty Bridge, then under construction, being away from the boulevard, did not have anything to do with traffic or conditions on the boulevard. His side of the boulevard, twenty feet wide, was entirely free from obstruction until he was within fifty feet of the point of collision, and there was no reason until that moment why he should not have expected to pass by in perfect safety. When appellant's car crossed the center line, immediately in front of the approaching truck, the minor appellee did all that could be done under the circumstances to avoid a collision. He attempted to turn to his left and pass the rear of the truck, but was blocked by the car in tow. Under these circumstances the collision was inevitable. It was caused by the negligence of appellant's driver, and in our judgment was not contributed to by any negligent act on the part of the minor appellee. In any event, the alleged negligence of appellee was a question which could only be determined by the jury. It could not be settled as a matter of law by the court.

The appellant's position is that the minor appellee was negligent in proceeding when he knew or should

286

have known from the unusual position of appellant's truck on the boulevard that it was in some difficulty, and that he should have brought his truck under control, and if necessary stopped it, to avoid a collision. The answer to this is that there was nothing in the position of appellant's truck on its side of the boulevard to suggest that it was about to be driven across the center line and in front of appellee's car, and the latter was not bound to anticipate such an act of negligence on the part of appellant's driver: Wagner v. P. R. T. Co., 252 Pa. 354; Roberts v. Freihofer B. Co., 283 Pa. 573.

In Amey v. Erb, 296 Pa. 561, in an action for injuries resulting from a collision between two trucks, plaintiff's descending and defendant's ascending a hill, it was held that the case was for the jury, and a verdict and judgment for plaintiff would be sustained, where it appeared that defendant's car was being driven in the center of the highway, so that the rear part of it extended across the middle line, that plaintiff sounded his horn, and in attempting to pass struck the rear of defendant's car, and, losing control, was carried into a ditch beside the road. We there said, in an opinion by Mr. Justice SADLER: "When the plaintiff reached defendant's car, the latter was occupying an undue portion of the road, and the former was required either to move farther over on the highway to the parallel ditch, or bring his motor to a standstill. The ability to pass safely on the side where he had the right to be was a matter for the exercise of his judgment. As was said in Community Fire Co. v. Pa. P. & L. Co., 92 Pa. Superior Ct. 304, 309: 'The driver of the truck could not be held to nice calculation as to the closeness of his approach to the automobile. There is nothing in the testimony tending to charge him with negligence in the manner in which he managed his machine, at least it is not so clear that it was not properly managed as to justify a legal conclusion to that effect. When forced off the line of his direction, the driver was bound to exercise ordinary care in the cir-

cumstances, but what he was to do when confronted with the peril of a collision......depended on the apparent imminence of the danger...... Where one finds himself in a position of danger which is not the result of his negligence, he is not responsible if he make a mistake of judgment in getting out. 'An honest exercise of judgment is all that is required of him even if he could have done better if he had had time to deliberate.' 'Whether [the plaintiff] acted, as would a reasonably prudent man under like conditions, was a fact for the jury': Wolf v. Sweeney, 270 Pa. 97, 101."

Mr. Justice KEPHART, speaking for the court, said in Jester v. Phila., Baltimore & Washington R. R. Co., 267 Pa. 10, 12: "We have frequently said a nonsuit can be entered only in clear cases, when it is inconceivable on any reasonable hypothesis that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, after viewing the evidence in the light most advantageous to plaintiff, could determine in his favor the controlling issue involved: Virgilio v. Walker & Brehm, 254 Pa. 241." The same principle of law applies to motions for binding instructions and judgment non obstante veredicto. If there be doubt as to the inferences to be drawn from the facts where the degree of care varies with the circumstances, the question of negligence is for the jury: Frank v. Cohen, 288 Pa. 221.

The facts of this case lead inevitably to the conclusion that the question of minor appellee's negligence was for the determination of the jury, and that the learned court below was not in error in so deciding.

Judgment affirmed.