Notarianni, Appellant, *v.* Ross.

Argued November 28, 1955. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Albert C. Gekoski,* with him *Charles S. Shotz,* for appellant.

*Bernard J. Smolens,* with him *John J. McDevitt, 3rd,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, January 13, 1956:

Plaintiff appeals from a judgment for defendant *non obstante veredicto* in a trespass action concerning collision of two motor vehicles. The pivotal question is whether, in the facts of this case, plaintiff's failure to stop his automobile within the assured clear distance

ahead constituted contributory negligence as matter of law. The learned court below ruled that it did.

Anthony Notarianni, the plaintiff, was driving his car northward on Fifth Street, in the City of Philadelphia. He entered a tunnel or underpass on that street, which permits traffic to pass under the approach to the Benjamin Franklin Delaware River Bridge. While in the tunnel plaintiff's automobile collided with the truck of Jackie Ross, the defendant.

The accident occurred shortly after noon on February 23, 1949, on a bright sunny day; the tunnel or underpass is entered by a descending ramp at the southern approach estimated to be fifty to eighty feet in length; plaintiff entered the tunnel at approximately twenty miles per hour; plaintiff's speed at the time of the accident was variously estimated at ten to twenty miles per hour; the mouth of the tunnel, through which plaintiff passed every day, presented an appearance of darkness; as plaintiff drove through the tunnel he could see only five to ten feet in front of him; after proceeding twenty-five to thirty feet plaintiff saw defendant's truck ten feet in front of him; he was unable to stop in time to avoid colliding with the rear of defendant's truck; the reason assigned by plaintiff for not seeing the truck was that his vision was restricted because of the sudden change from bright daylight to darkness.

The Vehicle Code of May 1, 1929, P. L. 905, Art. X, §1002, 75 PS 501 (a) provides, *inter alia*: "Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed . . . nor at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead." This Act has been consistently applied in cases such as the present one, where a motorist collides with the rear of a vehicle which he did not observe in time to avoid. Such

motorist is guilty of contributory negligence as matter of law.

It is plaintiff's contention that his failure to comply with the provisions of The Vehicle Code is excused because of his alleged restriction of vision due to the sudden change from bright daylight to darkness. He relies upon *Buohl v. Lockport Brewing Company*, 349 Pa. 377, 37 A. 2d 524; *Wolfe v. Beardsley*, 357 Pa. 1, 53 A. 2d 92. These cases relate solely to situations where temporary blindness results from bright lights of another vehicle. Such principle has no application where the darkness of the tunnel was visible and apparent from fifty to eighty feet as plaintiff approached its entrance; furthermore, he had passed through this tunnel nearly every day and was fully aware of the existing condition.

Neither vehicle had its lights turned on. Plaintiff testified "Who expected [defendant's truck] to be there?" But plaintiff could not *assume* that no obstruction would be in the darkened tunnel. In *Simrell v. Eschenbach*, 303 Pa. 156, 154 A. 369, speaking of the requirement that a driver of an automobile on a dark night must keep his car under such control that he may stop or turn when obstructions appear intercepting his passage, we said (p. 160): ". . . for it is possible. obstructions may appear at any time in the traveler's path, as the result of accident or otherwise."

When an operator of a motor vehicle enters and passes through darkness and fog he is required to maintain such control over his automobile as enables him to stop within the assured clear distance ahead: *Burkleca v. Stephens*, 370 Pa. 371, 88 A. 2d 57.

A case which involves closely analogous facts to the one now before us is *Shoffner v. Schmerin*, 316 Pa. 323, 175 A. 516. An automobile was being operated on a public highway and encountered patches of fog which

were visible several hundred feet ahead; the motorist entered the fog, observed a truck ahead, but was unable to stop and crashed into the vehicle. Justice MAXEY (later Chief Justice), speaking for the Court, said (p. 326): ". . . the evidence of plaintiff's negligence is so conclusive that it alone—regardless of whether or not there was evidence of defendant's negligence—requires the entry of judgment n.o.v. in favor of defendant. Cautious movement in fog is required of motorists (as it always has been of navigators). To take 'a leap in the dark' is to invite self-injury or self-destruction. . . ." And also (p. 328): ". . . That he 'thought this was a slight amount of fog' does not excuse him. Fog is fog and its obscurative qualities are known to all individuals who possess even the slight amount of intelligence legally required to qualify one to drive an automobile on the public highways. When plaintiff drove his car into a fog bank which hid a truck from his view, he simply spurned prudence and relied on chance. That chance failed him is his misfortune, not defendant's fault." To the same effect see: *Rich v. Petersen Truck Lines, Inc.,* 357 Pa. 318, 53 A. 2d 725, where the motorist drove through a bank of smoke and steam. Also: *Simrell v. Eschenbach,* supra; *Janeway v. Lafferty Brothers,* 323 Pa. 324, 185 A. 827; *Lauerman v. Strickler,* 141 Pa. Superior Ct. 240, 14 A. 2d 608. The judgment for defendant n.o.v. was properly entered.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The Benjamin Franklin Delaware River Bridge is a mammoth structure spanning the Delaware River, joining Philadelphia and Camden. The approach to

the bridge is necessarily a long and massive one whose ramps with their supports and abutments cover an extensive area. On the Philadelphia side, at Fifth and Race Streets, a tunnel or underpass plunges beneath the bridge ramp, allowing traffic to move, unaffected by vehicles streaming over the highway above.

On February 23, 1949, an unnamed driver for the defendant, Trenton Fast Freight, was driving a large commercial truck northwardly on Fifth Street when, for personal reasons, he stopped within the tunnel, without displaying any signal or illumination to warn other motorists of the danger his halted vehicle presented. This tunnel, which represents a continuation of Fifth Street, is a heavy travelled, through highway and is lighted with overhead bulbs. The truck, however, was of such enormous size that its bulk (it stood 25 feet against a 30 foot ceiling) shut off from motorists in the rear the overhead lights in front of the truck, thus creating a curtain of darkness before it.

While the defendant's truck was so parked, the plaintiff in this case, Anthony Notarianni, was driving his automobile on Fifth Street and had started down the descent which leads into the tunnel. Because of the steep grade at this point, it is impossible for a traveler to see into the tunnel a greater distance than 5 or 10 feet. Having reduced his speed from 25-30 to 10-18 miles per hour Notarianni entered the tunnel. As he did so he experienced the sudden ephemeral blindness which strikes anyone who passes from the bright sunshine outdoors into a dimly lit indoors. Quickly blinking back to full vision, he presently perceived for the first time the defendant's truck pointing into the curtain of darkness, and apparently moving forward. As the distance between the two vehicles shortened, however, he became aware that the truck was really stationary. Now only 10 feet away, he tried unsuc-

cessfully to avoid striking the truck, and a collision followed, the plaintiff sustaining injuries irrelevant to the discussion here.

Notarianni obtained a verdict in his suit against the owner of the truck. The lower Court entered judgment n.o.v., which this Court has, I believe, unjustly affirmed. The Majority holds that the plaintiff's failure to stop within the assured clear distance ahead constituted contributory negligence as a matter of law. It may well be that as against a norm of *perfect* driving, Notarianni erred in his appraisal of the conditions he found in the tunnel, but I fail to see where his conduct was so far removed from the standard applicable to the average safe motorist that it can be declared culpable by the Court. In *Todd v. Nesta*, 305 Pa. 280, 287, we said: "If there be doubt as to the inferences to be drawn from the facts where the degree of care varies with the circumstances, the question of negligence is for the jury." In *Miller v. Duffee Transfer Company*, 165 Pa. Superior Ct. 64, 67, the Superior Court said: "It is well settled that contributory negligence should be pronounced as a matter of law only 'when the evidence is clear and unmistakable, and no other inference can reasonably be deduced therefrom. . .'; if otherwise, the question of contributory negligence is for the jury."

Looking at the panoramic picture of this accident as reconstructed from the record, I cannot say that no inference other than contributory negligence is possible. The negligence of the truck driver was uninhibited and flagrant. Only the most blunderheaded ineptness or insipid recklessness could have caused him to halt his truck in a heavily travelled passageway knowing that because of the lighting peculiarities of the locale, he would not be immediately visible to those entering the tunnel after him. The truck was a leviathan of the road, it was encrusted with mud and dirt,

its height blotted out the lights in front of it, it blended into the underground obscurity, and then became a menace to all travelers on the way.

The distance travelled by Notarianni from the mouth of the tunnel to the point of collision was only 40 feet. Even without the momentary blindness which curtained for an instant the vision of every motorist entering the tunnel, Notarianni could easily have been deceived into believing that the truck was in movement. He had only a second or two to analyze all the factors involved and conclude mentally that his senses were being deceived by an optical illusion. To penalize him for not possessing an acuity of vision not common to mankind is to impose patterns of behavior that the fairness of the law should abhor. It was not only Notarianni who was deceived. The motorist following him, a John Bigley, testified that he also was of the impression, when first seeing the truck, that it was moving.

The Majority decides in effect that the plaintiff should have anticipated the truck driver's negligence. Our decisions, however, do not lay down such a formula. In *Nelson v. Damus,* 340 Pa. 49, 51, this Court said: "The defendant's negligence in this case in parking without lights, on the highway, is incontestable. Such a negligent act is not one which another driver is bound to foresee as reasonably likely to arise. In not anticipating defendant's negligent parking of the car and controlling his own car accordingly, plaintiff cannot be said as a matter of law to have been negligent."

In the case of *Farley v. Ventresco,* 307 Pa. 441, 445, the plaintiff collided with an unlighted crane whose "neutral color caused it to blend into that of the bank, so that it was difficult for the drivers of approaching automobiles to see it; and it was placed that the headlights of such automobiles would not disclose the crane

until they had passed over the brow of the hill." In allowing a verdict for the plaintiff, this Court said: "No one would contend that he would have been guilty of contributory negligence if the blinding had resulted from a brilliant flash of lightning. Since it was without fault on his part, we can no more say that he was bound to know what to do and actually to do it, within the short space of two seconds, whatever the cause of his blinding, especially as suddenly stopping would have put him in peril from the cars closely following him on the highway."

The momentary blindness which the plaintiff experienced in the case at bar was as fortuitous a visitation as a flash of lightning or a dazzling beam in the eye from another automobile's headlights, in either of which cases the plaintiff is immune from the charge of contributory negligence. Why should he not be exonerated from blame here? In Pennsylvania the charge of contributory negligence is one ladened with dread. It represents the clap of doom to an injured claimant no matter how tainted with fault the defendant may be. Courts should, therefore, be hesitant in sentencing a plaintiff's claim on that basis unless every inference supports the irrevocable and fatal condemnation.

What is contributory negligence? It simply means doing what one should not do, or failing to act as one should. The standard of performance as to what one should or should not do is intended to be that conduct which one expects in a reasonably prudent person. What is a reasonably prudent person? It is not a perfect man with perfect vision, hearing, perspective, intuition, foresight and hindsight. The reasonably prudent person whom the court decisions uphold as an exemplar of virtue is not a composite of Einstein, Lindbergh, Dr. Salk and Admiral Byrd. So far as the gasoline world is concerned, a reasonably prudent person

is one who, with ordinary faculties, comports himself according to the gauge of the average individual who has no desire to harm anyone else on the highway—and much less himself. It is my opinion that in the situation which confronted Notarianni, the average motorist would have done exactly what Notarianni did.

Fifth Street beneath the Delaware River Bridge ramp is a busy thoroughfare. Cars must be kept moving. If every person headed for the tunnel were required to dismount and advance on foot to ascertain if trucks were loitering within it, the resulting delays would create an intolerable congestion.

The Majority emphasizes the rule of "assured clear distance ahead", but in the exposition of that rule, one must keep in mind the roads of America—not the silver-paved highways of a Motor Utopia where accidents are impossible because, there, the automobilists cede to each other the right of way—and as a consequence no one ever moves.

The "assured" in the quoted phrase means *assured,* as one grasps the quality of assuredness in the situation in which he finds himself. If the assured clear distance rule were to be applied with dogmatic literalness, recoveries would be exceedingly rare, for in each instance of a collision between a moving car and a stationary object, the motorist conceivably always has the capacity to see the object before he physically comes into contact with it. However, whether he sees it a thousand feet ahead or only 10 feet ahead depends on many factors which the law evaluates in the light of all the contending forces bent on mischief. Legal liability then attaches or detaches according to the reasonable possibility open to the motorist to avoid the mishap.

Since law is intended to be the application of common sense and fundamental logic to life in all its tangible truths, the section of The Vehicle Code quoted

by the Majority * should not be studied and analyzed in a scholar's study under the lamp of abstract meditation. It should be read on the highways where the illumination of purpose comes from the headlights of reality, and legislative intent is to be found in the spinning wheels of fact. If the "assured clear distance ahead" doctrine announced in the Code were always to be applied with syllabic meticulousness, perilous situations would follow which the authors of the Code specifically intended to prevent. It often happens that a motorist must depend on a safety which is not apparent, in spite of the lack of an "assured clear distance ahead."

For instance, as an automobile approaches the brow of a hill with a sharply defined descent on the other side, the driver cannot know with absolute assurance what is on the other side of the crest. Nevertheless, he has the right to assume that no automobile is parked just beyond the summit and beyond his vision. If, however, a car should actually be parked or resting there in a disabled state without warning signal or light, the oncoming motorist could not be held guilty of contributory negligence if he crashed into it. If the law were to be interpreted otherwise, it would mean that every motorist approaching the crest of a hill would have to stop and conduct a reconnaisance before proceeding. On a heavily travelled highway a repeated maneuver of that kind could only result in a paralysis of traffic.

In the case of *Colonial Trust Co. v. Breuer,* 363 Pa. 101, the defendant placed on the highway a coil of steel 4 feet in diameter and 2 1/2 feet in height. The plaintiff driving at 30 miles per hour was momentarily blinded by the undimmed headlights of an approaching car

---

* The Vehicle Code of May 1, 1929, P. L. 905, Art. X, Sec. 1002, 75 PS 501 (a).

moving in the opposite direction. When 40 feet from the obstacle he observed it for the first time. He explained at the trial that it seemed to him to be merely a patch in the road, its real character not being discernible because of the black tarpaulin cover on the black-top highway. In removing the nonsuit entered in the Court below, this Court, speaking through Justice HORACE STERN (now Chief Justice), analyzed the phrase: "assured clear distance ahead": "The question arises, then, as to the meaning of this latter phrase, that is to say, whether the word 'assured' is to be interpreted in an objective or a subjective sense. Does it mean the *actual* clear distance ahead, or does it mean what *appears* to a reasonably prudent driver, exercising due care, to be the clear distance ahead? . . . It would seem wholly unreasonable and unjust to hold that the operator of a motor vehicle was . . . subject . . . to the characterization of his conduct as contributorily negligent because he did not lessen the speed of his car in the face of what was actually an obstruction on the roadway but was so camouflaged or deceptive in appearance that even a reasonably careful driver would not have been able to *realize* that it was such until he was actually upon it." (Emphasis in original Opinion.)

Quoting from *Simrell v. Eschenbach,* 303 Pa. 156, the Majority says in the case before us that "a driver of an automobile on a dark night must keep his car under such control that he may stop or turn when obstructions appear intercepting his passage . . . 'for it is possible obstructions may appear at any time in the traveler's path, as the result of accident or otherwise.' "

But in another case, and a later one, this Court placed the gem of revelation in the brooch of logic when it said that "Having one's car under control means that in any situation *reasonably likely to arise* he will be

able to stop his car before doing injury to any person or property." * Applying that principle to the facts in this case, it cannot be said that it was reasonably likely that the plaintiff would find a parked car in a tunnel where it had no right to stop at all.

Thus, it turns out in the end that Anthony Notarianni is forfeiting the verdict which was awarded him by a jury of his peers because he has eyes which are like everybody else's, because he is denied the gift of prophecy to determine what an unknown truck driver will do in a darkened cavern beyond his view, and because he is simply the average motorist without powers of divination, without mechanical magic, and without luck.

---

* *Schofield v. Druschel*, 359 Pa. 630, 635. (Emphasis mine)