Joseph P. MAKOWSKY, Administrator of the Estate of Albert Makowsky, Deceased, Appellant.

v.

Michael POVLICK and Robert F. Stegmeier.

No. 12657.

United States Court of Appeals Third Circuit.

Argued Nov. 20, 1958.

Decided Jan. 2, 1959.

B. Nathaniel Richter, Philadelphia, Pa. (Edward L. Wolf, Richter, Lord & Levy, Philadelphia, Pa., on the brief), for appellant.

E. Walter Helm, 3d, Philadelphia, Pa., for appellees.

Before BIGGS, Chief Judge, and MARIS and McLAUGHLIN, Circuit Judges.

MARIS, Circuit Judge.

The plaintiff, Joseph P. Makowsky, administrator of the estate of Albert Makowsky, deceased, appeals from a judgment entered in the District Court for the Eastern District of Pennsylvania dismissing his action against the defendants, Michael Povlick and Robert F. Stegmeier, brought to recover damages for the death of the plaintiff's decedent resulting from a motor vehicle collision. Federal jurisdiction was based upon diversity of citizenship. The operative facts occurred in Pennsylvania and the law of that state governs. After the plaintiff rested his case, which was being tried to a jury, the defendants moved for a compulsory dismissal. The defendants' motion was granted and judgment was entered dismissing the action. This appeal followed.

Before considering the merits of the appeal, we comment upon the procedure employed in the district court. It appears that the defendants' motion for a compulsory dismissal was made and granted under Rule 41(b), Federal Rules of Civil Procedure, 28 U.S.C. A dismissal under this Rule, other than for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits, Kuzma v. Bessemer & Lake Erie Railroad, 3 Cir., 1958, 259 F.2d 456, and requires the court to make findings as provided in Rule 52(a). However, no findings appear in the record before us. Accordingly, we shall treat defendants' motion as one for a directed verdict and the judgment as one entered upon a directed verdict in accordance with Rule 50(a). Meyonberg v. Pennsylvania R. Co., 3 Cir., 1947, 165 F.2d 50, 52.

The plaintiff contends that the district court erred in not submitting the issue of defendants' negligence to the jury. In considering this question, we bear in mind that cases are not lightly to be taken from the jury since they are the recognized triers of fact. On a motion for a directed verdict, we must accept as true all the facts favorable to the

plaintiff which the evidence tends to prove and draw all reasonable inferences against the defendants. Warlich v. Miller, 3 Cir., 1944, 141 F.2d 168. If the evidence is of such a character that reasonable men in an impartial exercise of judgment might reach different conclusions, the case should be submitted to the jury. Larkin v. May Department Stores Company, 3 Cir., 1958, 250 F.2d 948, 950.

■ From the evidence it appears that on December 1, 1955 about 4:30 o'clock A.M. plaintiff's decedent sustained fatal injuries when his automobile crashed into the rear end of a tractor-trailer owned by defendant Robert F. Stegmeier and being operated by defendant Michael Povlick in the course of his employment by Stegmeier. The plaintiff's decedent died about 14 hours thereafter too severely injured to furnish any information as to the details of the accident. The plaintiff relied on the testimony of witnesses who arrived at the scene shortly after the occurrence of the accident and on the physical facts and circumstances of the collision. This evidence was, of course, circumstantial in nature but it nonetheless had probative value. For the testimony of eyewitnesses to an accident is not essential so long as there is affirmative proof of negligence. Lukon v. Pennsylvania R. Co., 3 Cir., 1942, 131 F.2d 327, 329; Van Tine v. Cornelius, 1947, 355 Pa. 584, 586, 50 A.2d 299, 300.

The collision occurred on State Highway Route 309, about five miles south of Tamaqua, Pennsylvania. After the accident both vehicles were found on Route 309, which, at the scene of the collision, is a four-lane highway with two northbound lanes and two southbound lanes, the northbound lanes being separated from the southbound lanes by concrete dividers. The vehicles were standing north of the northern exit of a crescent-shaped private driveway, which entered the highway obliquely at two points. Plaintiff's witnesses did not agree on the distance of the tractor-trailer, which was 40 feet long, from the private driveway, one testifying that it was 10 to 15 feet away, another stating it was 20 feet away, another that it was 40 to 50 feet away, and another that it was 50 feet away. The topography of the land at the scene of the collision indicated that Route 309 was on an ascending grade as one approached the point of the impact from the south and at the scene of the impact north of the exit Route 309 was on a downgrade. The northern exit of the private road entered the highway at the crest of the rise, where the highway is relatively level before proceeding downgrade again. Povlick had evidently used the northern exit of the private driveway in order to gain access to Route 309.

The witnesses testified that the trailer was resting on the crest of the hill after the collision and the tractor was pointed downgrade. The trailer was straddling both northbound lanes in a northwesterly direction with its greater portion located in the easternmost northbound lane. The tractor was pointed in a northerly direction with its greater part also located in the easternmost northbound lane. A state trooper who investigated the collision stated that it appeared to him as if the tractor-trailer had just turned onto the highway and was about to straighten itself out before proceeding in a northerly direction. A motorist, Yenolevich, and his passenger, Kanarick, arrived at the scene of the collision shortly after it had happened. If it had not been for the fact that their attention was attracted by a flickering light which turned out to be a flashlight in the hand of Povlick they would not have had notice of the presence on the highway of the two vehicles involved in the collision, for the scene was in total darkness. Upon their arrival, Povlick left the scene to get his boss. There were no lights lit on the rear or side of the trailer nor were the headlights of the tractor lit. These two men maintained a vigil at the scene of the accident and attempted to render some assistance to plaintiff's injured decedent.

During the time that Povlick was absent from the scene, another motorist, Cunningham, and his passenger, Wagner,

arrived at the scene of the accident. They also testified as to the position of the vehicles and the complete absence of lights anywhere upon the tractor or trailer. Cunningham and Wagner took the plaintiff's decedent to the Coaldale Hospital. At about 5:05 o'clock A.M. the state trooper arrived on the scene. He corroborated the testimony of the other witnesses as to the positions of the vehicles and testified that upon his arrival he, too, found no lights lit on the tractor or trailer. He directed Povlick, who had just returned to the scene of the accident, to turn on all of the lights of the vehicle. Five rear lights were found to be completely inoperative.

The plaintiff contends that under these facts Povlick was guilty of statutory negligence and the decedent was free of contributory negligence. We think it is clear that the record supports the plaintiff's contention that Povlick was negligent. Section 801 of the Pennsylvania Motor Vehicle Code, 75 P.S.Pa. § 351, requires that a vehicle upon a highway within Pennsylvania have specific lighting at night. From the evidence it can fairly be inferred that the defendants' vehicle was being operated without lights in violation of the Pennsylvania law and that the defendants were negligent in this regard.

The defendants, however, say that the plaintiff is barred from recovery by the contributory negligence of his decedent. For this proposition they rely upon the case of Griffith v. Weiner, 1953, 373 Pa. 184, 95 A.2d 517. Section 1002 of the Pennsylvania Motor Vehicle Code, 75 P.S. Pa. § 501, requires that any person driving a vehicle on the highway may not drive at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead. This statute has been consistently applied in cases where a motorist collides with the rear of a vehicle which he did not observe in time to avoid. Such a motorist, it has been held, is guilty of contributory negligence as a matter of law. Notarianni v. Ross, 1956, 384 Pa. 63, 64, 119 A.2d 792,

793. In the Griffith case the decedent drove his automobile into the rear of a large tractor-trailer which was parked at the right edge of a main highway without lights. The court reaffirmed its holding in Stark v. Fullerton Trucking Company, 1935, 318 Pa. 541, 544, 179 A. 84, 86, stating as follows [Griffith v. Weiner, 373 Pa. 184, 188–189, 95 A.2d 517, 519]:

"* * * This implies that the driver will always be carefully watching so much of the road as is included within that 'assured clear distance ahead,' and will always keep his car so under control that he can stop it within that distance. What this will be, of course, will vary according to the visibility at the time and other attending circumstances; but, after taking those circumstances into consideration, the requirement is fixed and unchangeable. There is no excuse for a failure to obey the statutory requirement unless the obstacle in front is for the first time in the driver's view, after the car has passed the point where the 'assured clear distance ahead,' quoad that point, has been reached and passed, and the obstacle is then too close to be avoided. This can never be where, as here, the dangerous object is standing still before the outer limit of the 'assured clear distance ahead' has been reached and continues in that one position. It is no answer to say, as appellant seems to attempt here, that decedent had no reason to expect a stalling on the highway of the automobiles into which he crashed. The statute was passed to protect life and limb, decedent was bound to guard, to the extent stated, against that and every other possibility, and the statute must be construed and applied to further that purpose. It may be conceded that ordinarily decedent's death would raise a presumption that he had taken all necessary precautions for his own safety, but this presumption has no existence as

against the certainty that if he had done so here he would not then have died."

To the same effect is the decision of the Supreme Court of Pennsylvania in Rich v. Petersen Truck Lines, 1947, 357 Pa. 318, 53 A.2d 725, 726, in which case defendant's tractor and trailer "was in a jack-knifed position, the trailer and tractor forming a 'V', with the tractor occupying about three-quarters of the plaintiff's lane of traffic," which the plaintiff, enveloped in a bank of smoke and steam from a railroad yard was unable to see ahead. The Court approved the following statement of the lower court [357 Pa. 318, 321–322, 53 A.2d 725, 727]:

"* * * The assured clear distance rule has been the law of Pennsylvania for many years. It was established as a common law principle and imbedded in our law by the above statute. Our courts have called it, 'the only safe rule' * * 'inflexible' * * * 'fixed and unchangeable' * * * the statute has been applied in many cases as requiring judgment n. o. v. against operators of vehicles who have driven into obstructions on the highway, regardless of the negligence of the person who created the hazard. The rule has been applied to hold plaintiffs guilty of contributory negligence for having driven into obstacles on the highway when their range of vision was shortened by fog * * * In all of these cases it was held it is unavailing for the plaintiff to say that he had no reason to expect the obstruction in the highway."

The plaintiff, while recognizing this well established rule, contends that there are exceptions to the assured clear distance rule and that this case comes within one of the exceptions. It is true that it has been held that a fixed rule cannot be laid down which will determine in every instance the person who is legally responsible for a rear-end collision between a parked vehicle and one that is moving on a highway at night. Buohl v. Lockport Brewing Co., 1944, 349 Pa. 377, 379, 37 A.2d 524, 525. For example, temporary blinding caused by the bright headlights of another approaching vehicle has been recognized, under particular circumstances, as a legally sufficient excuse for failing to stop within the assured clear distance ahead. Downey v. Union Paving Co., 3 Cir., 1949, 184 F.2d 481, 483–484.

The plaintiff's contention is that his decedent is excused from complying with the rule because he was suddenly confronted by the tractor-trailer when Povlick, in violation of section 1014(a) of the Pennsylvania Motor Vehicle Code, 75 P.S.Pa. § 573(a), drove onto Route 309 in the face of oncoming traffic and failed to yield the right of way to the decedent's approaching vehicle. The plaintiff argues that the physical position of the vehicles, in combination with other facets of negligence, were such as to make this case one in which the jury could reasonably conclude that the defendants' vehicle without warning came suddenly onto the highway from the side road at a point where the plaintiff's decedent could not avoid the collision despite the exercise of caution. In support of this argument the plaintiff says the position of the defendants' vehicle indicated that it had "just entered" the highway. The fact is that his witnesses placed the rear end of the trailer after the collision upon the highway at a point somewhere between 10 and 50 feet north of the point of entry, the tractor and trailer being jack-knifed across the northlanes of the road. From this evidence the plaintiff seeks to draw the inference that defendants' vehicle came suddenly upon the highway within the decedent's range of vision before he could avoid the accident.

■■ We do not think that the evidence supports the plaintiff's theory. For it must be remembered that the tractor-trailer was 40 feet long and that its rear end was at least 10 feet from the driveway when it stopped after the collision. Since the plaintiff's decedent's

car collided with the rear end and not the side of the defendants' trailer, the tractor-trailer which was loaded with cases of beer and which had apparently turned into the highway and was proceeding to straighten itself out in the northbound lanes must have been visible on the highway for an appreciable period of time before the accident. These physical facts definitely rebut the suggestion that Povlick drove onto the highway so suddenly that the decedent could not stop in time to avoid collision. To submit to the jury on the evidence in this case the question whether Povlick drove suddenly onto the highway within the decedent's assured clear distance ahead would have required them to reject the evidence and resort to pure speculation in determining what actually happened. This, of course, a jury may not be permitted to do. Galloway v. United States, 1943, 319 U.S. 372, 395, 63 S.Ct. 1077, 87 L.Ed. 1458. We hold that the district court did not err in its disposition of the case.

The judgment of the district court will be affirmed.