Susan ELASKY and Daniel Elasky,
Plaintiffs,

v.

The PENNSYLVANIA RAILROAD COM-
PANY, Defendant.

Civ. No. 36840.

United States District Court
N. D. Ohio, E. D.

Oct. 10, 1962.

Richard M. Markus, Sindell, Sindell, Bourne & Markus, Cleveland, Ohio, C. Z. Christoff, Massillon, Ohio, for plaintiffs.

Charles F. Clarke, Cleveland, Ohio, for defendant.

McNAMEE, District Judge.

Plaintiff, Susan Elasky, who was injured as a result of a collision between an automobile she was operating and a truck of the defendant, moves for an order finding there is no genuine issue as to any material fact on the issue of liability; that defendant's negligence proximately caused the collision and that the issues at the trial of the case be limited to (1) determining whether plaintiff sustained injuries and damages as a result of the collision referred to in the complaint; (2) what amount will fairly compensate plaintiff for damages, if any, proximately caused by the collision. In the alternative, plaintiff asks, at a hearing on the motion, the Court, by examining the pleadings and evidence before it and by interrogating counsel, ascertain what material facts are actually and in good faith controverted, and make an appropriate order under Rule 56(d). Defendant asserts that there is a dispute as to material facts relating to the issues of negligence, contributory negligence and whether at the time of the collision defendant's driver was acting within the scope of his employment.

## NEGLIGENCE

The undisputed facts as shown by Mr. Khoury's deposition are that

Khoury, who was driving defendant's truck at the time of the collision, was employed by the defendant as a repairman. In the performance of his work Khoury from time to time was required to operate motor vehicles of the defendant. On June 11, 1959, Khoury obtained a company truck at the garage in Canton, Ohio. He then drove two helpers, Nemeth and Kragalac, to Orville, Ohio, where the three of them repaired a railroad car. Thereafter, with his two helpers in the truck, Khoury proceeded to Massillon, Ohio, where repairs were to be made to a railroad car in the yards in that city. As the truck was proceeding northerly on 3rd Street, N.W., near Cherry Street, in Massillon, Khoury saw Art Ream, who was the yardmaster at Massillon, Ohio, walking on the sidewalk in the same direction in which the truck was moving. According to Khoury, Ream was the man "who would be getting my location of this car I was going to repair." After proceeding about 50 feet beyond the point where he saw Ream, Khoury brought his truck to a stop and then, with a view to giving Ream a lift, backed his truck a distance of about 10 to 15 feet into and against the automobile of Mrs. Elasky, which had been proceeding northerly in the rear of defendant's truck. Khoury testified that before backing his truck he looked in his rear vision mirrors but did not see the automobile of plaintiff. Art Ream, the yardmaster who had been employed by the railroad for 45 years, was deposed and testified, inter alia, that from his position on the sidewalk he saw the collision and the events immediately preceding it. He stated that he was walking northerly on 3rd Street, N.W., and when about one-half mile from the Pennsylvania yards he saw the defendant's truck pass him while moving in a northerly direction; that as the truck reached a point about 100 feet north of Ream's position it stopped. Immediately thereafter the truck started to back up. Ream stated that he neither saw nor heard any signal given by the truck driver of his intention to back up. He stated also that he saw the plaintiff's car drive up behind the truck; that the car was about 15 feet in back of the truck and apparently the driver had no difficulty in stopping when the truck stopped. Ream stated also that plaintiff's automobile was at a complete stop before the struck started to back up. He testified that when he saw the truck backing up he hollered and "swung down to a stop in railroad language."

"Q. You waved your arms back and forth across your face, is that right?

"A. Right.

"Q. And you shouted?

"A. Yes, I hollered.

"Q. What did you shout?

"A. I just shouted 'hey.'

"Q. You shouted 'Hey?'

"A. Yes.

\*    \*    \*    \*    \*    \*

"Q. Did the truck push the car?

"A. Yes.

"Q. How far did it push the car after it hit it?

"A. I would say about 10 feet."

There is no evidence in the record that contradicts or qualifies the above testimony which indicates clearly that the accident was due solely to the negligence of Khoury.

## CONTRIBUTORY NEGLIGENCE

In addition to the evidence reviewed above, part of which indirectly relates to the issue of contributory negligence, the only testimony relating directly to that issue is the following from the deposition of Ream:

"Q. How far was the back of that car in front of you when the car came to a stop?

"A. You mean the car that—

"Q. The car that was hit.

"A. —the lady was driving?

"Q. Yes.

"A. Oh, I would say it was 75 feet, probably, from me to the back of that car.

"Q. Were the car and the truck both stopped at the same time?

"A. I think so.

"Q. So that the car was at a complete stop before the truck started to back up?

"A. Yes."

Defendant argues that plaintiff's conduct finds no support in any answers by plaintiff to interrogatories or by deposed testimony offered in her behalf. The contention is wide of the mark. The burden of proof on the issue of contributory negligence rests upon the defendant and, as shown above, the only permissible inference to be drawn from the deposition testimony negates completely the claim of contributory negligence.

Was the operator of defendant's truck acting within the scope of his employment at the time of the collision?

Defendant stoutly contends that its driver, Khoury, was on a frolic of his own at the time of the collision and under well settled principles defendant cannot be held liable. In support of its position defendant cites and relies upon Skapura v. Cleveland Elec. Illuminating Co., Ohio App., 100 N.E.2d 700; Tri-State Baking v. Hites, 14 Ohio Law Abst. 606; Bauman v. Sincavich, 137 Ohio St. 21, 27 N.E.2d 772; Gulla v. Straus, 154 Ohio St. 193, 93 N.E.2d 662. In each of the first three of the cited cases it is clear that at the times of the negligent act in question the employee had deviated substantially from the scope of his employment and was engaged solely in furthering a purpose of his own. In Gulla v. Straus, supra, the fourth case cited above, the major issue was whether defendant had knowingly entrusted the operation of his automobile to a incompetent driver. But in that case the court remarked in passing:

"* * * no liability could be asserted against Straus on the ground of agency, because Reynolds had not only departed from the scope of the permission given him to operate the truck but had violated specific instructions by Straus to return the truck to the parking lot." (p. 195, 93 N.E.2d p. 664)

The above cited cases correctly applied the rule that—

"A servant departs from his employment so as to free his master from liability for his acts, when he engages in affairs of his own." 36 Ohio Jur.2d 361, § 388.

However, it is not every case of departure from his employment by the servant that relieves the master from liability for the former's negligent conduct. 36 Ohio Jur. 2d, 362, § 383.

"A servant may be combining both his and the master's business at the same time and in such case the master will be liable for his acts." Ibid, p. 363.

See also 35 Am.Jur. 990–991, § 556.

There is no real dispute as to the facts on this last issue on which partial summary judgment is sought. In answering an interrogatory inquiring whether the driver of defendant's truck was acting within the scope of his authority, defendant, speaking through its claim agent, said "No." The opinion of the claim agent, based upon hearsay evidence and his interpretation of the legal effect of such testimony, cannot be considered competent to refute the sworn testimony of defendant's employees in relation to the detailed facts relevant to the issue under consideration. It is settled that affidavits based upon hearsay and not upon personal knowledge do not satisfy the requirements of Rule 56. Chapman v. United States, 8 Cir., 139 F.2d 327.

"[M]ere denials not accompanied by facts which would be admissible in evidence at a hearing are not sufficient to raise a genuine issue of fact." Minnesota Mining & Mfg. Co. v. United States, 4 Cir., 279 F. 2d 409, 415, citing Piantadosi v. Loews, Inc., 9 Cir., 137 F.2d 534, 536.

To the same effect is Minnesota Mining & Mfg. Co. v. Superior Insulating Tape

Co., 8 Cir., 284 F.2d 478, 483. See also Bros. Inc. v. Grace Mfg. Co., 5 Cir., 261 F.2d 428, 429. The few excerpts of Khoury's deposition quoted in defendant's brief do not controvert or modify the evidence adduced by plaintiff.

■ As shown above, Khoury testified that as he was operating the defendant's truck on his way to the Massillon yards he saw Art Ream whom he knew as the yardmaster and who was sometimes referred to as the "clerk." According to Khoury, Ream was the man from whom he would get information as to the location of the car which was to be repaired. It is undisputed that Khoury stopped the truck and backed up for the purpose of giving Ream a lift to the yards a half a mile away to which both Khoury and Ream were proceeding. It is undisputed that after the accident Khoury did in fact see Ream and obtained such information from him and that he reported to Ream after the repair work was completed and at that time inquired if there was any further repair work to be done at the Massillon yard. It would require greater insight than is possessed by this Court to discover a genuine dispute of fact on the question of whether Khoury was acting within the scope of his employment at the time of the collision. Khoury intended no mere act of kindness to a personal friend in stopping and backing the truck. His purpose to pick up Ream was related to his employment and within its scope. Khoury considered that in driving Ream to the yards he would be performing "an act of courtesy." But he could not have been unaware of the fact that by transporting Ream to the yards he probably would have received the information and directions about the repair work much sooner than if Ream was required to walk the remaining half mile to his office in the yards. A fair evaluation of the evidentiary facts in the light of the applicable law compels an affirmative finding that at the time of the collision on June 11, 1959, Khoury, as the operator of defendant's truck, was acting within the scope of his employment.

For the reasons assigned above, the motion for partial summary judgment is granted.

An order may be prepared in accordance with the foregoing.