## Allen v. Kaufmann

*Mitchell A. Kramer,* for plaintiff.
*Joseph B. Erwin,* for defendant.

WEINROTT, J., March 6, 1969.—Presented to the court in this case is the unusual situation of a motion by plaintiff in a trespass suit for a summary judgment against defendant on the pretrial record. The motion is restricted to liability, on the ground that defendant's own deposition establishes as an incontroverti-

ble fact that he was negligent, and that on the issue of liability there remains nothing to be tried by a court or before a jury. The case would still go to trial, but only to ascertain plaintiff's damages.

Rare as the situation is, we propose to grant the motion.

According to the complaint, on September 14, 1967, shortly before 1 a.m., plaintiff was a passenger in a car driven by Henry Stokes, which was headed north on Belfield Avenue in Philadelphia, and had come to a stop for a traffic signal at a three-way intersection with Windrim Avenue and 16th Street. As the car was standing in obedience to the signal, defendant drove up from behind and struck the Stokes car, injuring plaintiff. Defendant entered an appearance by counsel but filed no answer. (Of course, he was not required to do so.) On October 7, 1968, plaintiff's attorney took defendant's deposition.

Defendant said that around midnight he was on Belfield Avenue, driving home from a center city motion picture theater. He was familiar with the route. "That's the way I come when I come in from the City," he said. "I was looking for the red light."

We quote the ensuing dialogue:

"Q. Yes?

"A. The next thing I knew, I was on top of the car. I jumped on the brake and I was too late.

"Q. Your car struck the rear of the car in front of you?

"A. That's right.

"Q. How far away from that car was your car when you first saw the car that you struck?

"A. How far away? Not very far. I couldn't say how many feet. All I saw was an object in front of me. I jumped on the brakes and that was it.

"Q. At what speed were you traveling when you hit your brakes?

"A. Between 15 and 20.

"Q. At what speed were you traveling at the time you struck the other car?

"A. I don't know. I did not look at the speedometer."

Defendant added that he swerved "toward the left a little bit"; that his "front end, the bumper and part of the right side in the front" struck the other car "square in the middle"; that it was "kind of a hazy night," but he could not remember whether it was rainy or misty. We continue:

"Q. When you first saw the other car, what was it doing, standing still?

"A. It must have been standing still. Like I said before, when I saw it, I jumped on the brakes."

Under questioning by his attorney, he added:

"Q. Mr. Kaufmann, I believe you testified that you saw this other car directly before impact; is that correct?

"A. That's right.

"Q. What was its color?

"A. It was a dark—to me it looked like a dark maroon.

"Q. Did you see whether its taillights were on?

"A. I didn't notice. All I seen was a dark red object in front of me, and I jumped on the brakes."

Defendant said also that he drove that street "quite a bit," knew there was a traffic light at that intersection, and was looking for that particular light when he struck the car in front in "the same lane where I was in." He could not recall specific distances from the curb or center line. All of that was quite normal, and indeed bears out the clear impression the defendant gives of having testified with full truth and candor as he remembered the circumstances. His testimony condemns him; but he was honest.

The Vehicle Code of April 29, 1959, P. L. 58, provides in section 1002(a), 75 PS §1002, as amended:

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed, not greater than nor less than is reasonable and proper, having due regard to the traffic surface, and width of the highway, and of any other restrictions or conditions then and there existing; . . . *nor at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead.*"

We have emphasized the final provision, which is the principal one applicable to the present case. The preceding requirement, that one shall drive with due regard to "restrictions and conditions then and there existing," also is pertinent; the position of another car standing in front of the driver's car, which he must strike if he does not come to a stop, obviously is a restriction.

Defendant admits frankly that he did not see the car in front of him until immediately before the impact. He asserts no obstacle to vision, no reason for his lack of observation, except that he knew of the traffic light at that intersection and was "looking for the red light." The conclusion is inescapable that in his concentration on the traffic light he failed to keep a proper lookout for objects in his path. We quote from Kmetz v. Lochiatto, 421 Pa. 363, 365-366 (1966):

"Why didn't the defendant see the plaintiff? He offers no explanation other than that he just didn't see him. This kind of an answer, in the face of the physical facts, cannot exculpate him since the law requires unremitting vigilance at the wheel, which vigilance necessarily encompasses a constant viewing of what is ahead. At one time or another, even if only momentarily, the plaintiff was within the defendant's line of vision. If he did not see him, only one conclusion is possible, and that is that he was not looking. Not looking while operating an

engine which can crash, mangle and cripple all before it is negligence per se.

"The law not only requires the motorist to look where he is going, but, while looking, to have his car under such control that he can stop within the assured clear distance ahead."

The citation states both principles involved in the instant case: the duty to keep a lookout, and the duty to be able to stop within the limit of vision ahead.

As to the requirement "that the driver operate his automobile at such a rate of speed and in such a manner that he can always stop it within the distance that he can clearly see," we add the corollary stated in the opinion from which the latter quotation comes:

"By this is meant the range of the driver's vision which, of course, in darkness is the scope of his headlights": Enfield v. Stout, 400 Pa. 6, 11 (1960).

As a further corollary, if the night was hazy, the statutory limit of "the assured clear distance ahead" was shortened correspondingly.

"This distance, of course, varies with the circumstances. The range of vision may be shortened by storm, fog or other conditions: . . . It may be long, as on a straight road in bright daylight, or it may be extremely short, as here.": Janeway v. Lafferty Brothers, 323 Pa. 324, 327 (1936).

Applying the rule to a man killed while driving head on into a standing or very slowly moving unlighted locomotive, in darkness on a snowy roadway, the U. S. Court of Appeals for the Third Circuit has declared:

"If the evidence permits no rational inference but that a collision resulted from failure so to control the car that it could be stopped within the assured clear distance ahead, however short, then the driver is contributorily negligent as a matter of law.": Parker v. Reading Company, 363 F.2d 608, 610 (CA 3, 1966).

"The assured clear distance rule has been the law of Pennsylvania for many years. It was established as a common law principle and imbedded in our law by the above statute. Our courts have called it, 'the only safe rule' . . . 'inflexible' . . . 'fixed and unchangeable': . . . the statute has been applied in many cases as requiring judgment n.o.v. against operators of vehicles who have driven into obstructions on the highway, regardless of the negligence of the person who created the hazard. The rule has been applied to hold plaintiffs guilty of contributory negligence for having driven into obstacles on the highway when their range of vision was shortened by fog.": Rich v. Petersen Truck Lines, Inc., 357 Pa. 318, 321 (1947).

The statute referred to in the opinion cited was The Vehicle Code of May 1, 1929, P. L. 905, from which section 1002(a) was carried over verbatim into our present vehicle code.

We concede the point made by defendant that the mere happening of a rear end collision does not establish negligence. But here we have much more than the mere event itself. We have defendant's testimony proving clearly that he failed to keep a proper lookout; to see in proper time what must have been visible ahead of him if he had looked; and to keep his car under such control as to be able to stop within the visible distance ahead, whether the night was dark, the weather hazy, or other circumstances were as they might be.

Where a plaintiff drove into the Fifth Street tunnel under the Benjamin Franklin Bridge in Philadelphia, and struck a truck standing in the tunnel without lights, the temporary blindness caused by the sudden passage from the bright street into the dark tunnel did not prevent plaintiff from being held contributorily negligent as a matter of law: Notarianni v. Ross, 384

Pa. 63 (1956). To the same effect is Smith v. Petaccio, 384 Pa. 74 (1956). In a case where plaintiff driving through patches of fog crashed into the rear of a moving truck, the same principle was applied, and judgment n.o.v. was entered for defendant: Shoffner v. Schmerin, 316 Pa. 323 (1934).

Unquestionably, if defendant in the present case were plaintiff, at a trial he would be declared guilty of contributory negligence as a matter of law, and a nonsuit would be entered against him. Furthermore, if the case were allowed to go to the jury and he were awarded damages, the court en banc would grant his adversary a judgment non obstante veredicto. Should the principle be different where it is not plaintiff but defendant who is manifestly guilty of negligence, and where the problem is not one of entering a nonsuit but of giving the jury a binding instruction that it must render a verdict for plaintiff?

In logic, the rule should work both ways; but in practice our survey has yielded no case in which a Pennsylvania State court has approved binding instructions against a defendant on the issue of negligence. The reasoning no doubt is that issues based on oral testimony should ordinarily be left to a jury (see Majewski v. Lempka, 1936, 321 Pa. 369, at 373), and that if the jury goes manifestly wrong the remedy is a new trial.

Nevertheless, in the case at bar we do not have a trial problem but a pretrial motion, under a rule adopted in 1966, and not in effect when the bulk of decisions on directed verdicts and motions for judgment n.o.v. came down. The rule is no. 1035 of the Pennsylvania Rules of Civil Procedure, the applicable parts of which declare:

"(a) After the pleadings are closed, but within such time as not to delay trial, any party may move

for summary judgment on the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits, if any.

"(b) The adverse party, prior to the day of hearing, may serve opposing affidavits. The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issues of liability alone although there is a genuine issue as to the amount of damages."

A few observations are in order. The rule is recent; it was adopted in 1966; little opportunity has arisen for its study by our State courts. However, paragraph (b) was adapted from the much earlier Federal Rule of Civil Procedure 56(c). See Rules Committee Note cited in 2A Anderson's Pa. Civ. Pract. 1968 pocket part page 223, and a number of Federal decisions on the point do exist. Rule 1035(a) declares expressly that "any party," not merely a defendant, may move for judgment. Finally, our rule 1035 was adopted as an assumpsit rule; but rule 1041 makes "the procedure in the action of trespass . . . in accordance with the rules relating to the action of assumpsit," and even though rule 1041 antedates rule 1035, we take it to apply. In Ruhe v. Kroger Company, 425 Pa. 213 (1967), our State Supreme Court assumed that rule 1035 did apply to a trespass case.

In the Ruhe case, the issue was not one of negligence but of the effect of a joint tortfeasor release. A tenant sued a lessee above him for water damage. Defendant joined the owner, the contractor who put up the building, and the plumbing subcontractor. Plaintiff released the owner and the general contractor.

Those additional defendants set up the release in an answer and new matter. The original defendant Kroger filed preliminary objections alleging that the release discharged him of liability. The lower court judge, after a conference in chambers, entered a nonsuit against plaintiff. The court en banc declined to remove it, and plaintiff appealed. The Supreme Court declared the nonsuit in chambers entirely irregular, and remanded the case with the admonition that rule 1035 (and also the earlier rule 1034, allowing a pretrial judgment on the pleadings) provided the proper procedure to determine in limine the impact of the joint tortfeasor release. With respect to rule 1035, the court remarked, 425 Pa. at page 216:

"The new provision for summary judgment (Pa. R.C.P. 1035) is designed to remedy the sufficiently pleaded but factually improper answer. If the defendant can show, by affidavits, depositions, discovery or other supplementary procedures that the plaintiff's reply is a sham, that there is no issue on which the plaintiff has a right to trial, and that the affirmative defenses pleaded are conclusive, the defendant may move for summary judgment and thereby terminate the litigation."

The case, of course, did not arise on a question of negligence, and it was defendant, not plaintiff, who was held entitled to the use of rule 1035. Nevertheless, the decision in principle must be taken to establish that a party to a trespass action may obtain a summary judgment where no factual issue exists requiring a trial. Beyond that we have the clear provision in rule 1035(b) itself that where a question of damages does remain open, a trial should follow limited to that question alone.

We may observe at this juncture that rule 1035 doubtless was intended to eliminate trials as far as possible, and that a judgment on liability alone still

requires a trial as to the amount of damages. However, such a trial is bound to be shorter than a plenary one on all issues including negligence, and to that extent rule 1035, in a case such as ours, still serves a useful purpose.

Rule 1035 received mention also in Greenberg v. Aetna Insurance Company, 427 Pa. 511 (1967), in the majority opinion as inapplicable before the pleadings were closed (page 517), and in two dissenting opinions as a remedy available in a trespass suit for libel, pp. 521, 524.

Three unreported lower court cases, all in Philadelphia, have been cited to us as upholding the right of a plaintiff in a negligence suit to a summary judgment against a defendant. We have examined those cases, and no doubt exists that they do support the contention of plaintiff in the instant case. In none was an opinion filed.

In Nimmer v. Mummart, C. P. 3, June term 1965, no. 288, the facts were virtually identical with those presented here: a car stopped for a red light was struck in the rear, depositions of the defendant driver were taken, and plaintiff moved for a summary judgment. On January 31, 1967, Judge Stanley M. Greenberg granted it as to liability, leaving damages for a trial.

In Kimble v. Bellamy, C. P. Phila., June term 1967, no. 2091, the facts were again similar, defendant's car having run into one in front, which had stopped for a red light. Under a motion for judgment after depositions of the defendant, Judge (then President Judge) Joseph Sloane on August 27, 1968, ordered a similar judgment. So also did Judge Edward J. Bradley on December 12, 1967, in Kimble v. Limar, C. P. 9, June term 1966, no. 4443.

Federal Rule 56(c), except for a slight difference in preliminary wording as to the time for filing the mo-

tion, is virtually identical with our rule 1035(b). Under the Federal rule, adopted in 1938 and amended in 1946 and 1963, negligence decisions are not plentiful, and judgments for plaintiffs are less numerous than those for defendants, but they do exist: Barron and Holtzoff, *Federal Practice and Procedure*, Vol. 3, sec. 1232.1 (1958).

In the often cited case of American Airlines, Inc. v. Ulen, 186 F.2d 529 (C.A.D.C. 1949), in a suit by a passenger injured in a plane crash, where it was undisputed that the plane was flying below the legal altitude and struck a mountain as a result, the court ordered a summary judgment as to negligence and proximate cause, and left the amount of damages for trial.

In the Western District of Pennsylvania, where the driver of a car in which plaintiff was riding ran into a truck ahead and plaintiff sued his driver, the United States District Court ordered a summary judgment against defendant driver: Block v. Biddle, 36 F.R.D. 426 (W.D. Pa. 1965). In depositions and answers to interrogatories, the driver had said he saw no lights ahead, and when he did see the truck and tried to pull around it instead of stopping, the side of his car struck the truck. The court declared that negligence was clear.

In a Kentucky case, where use of gasoline in violation of a state regulation caused an explosion in a gasoline station, the district court found negligence per se and ordered a summary judgment as to liability and proximate cause: Home Insurance Company v. Hamilton, 253 F.Supp. 752 (E.D. Ky. 1966).

In Ohio, where a truck driver deposed that he had stopped, looked behind, saw nothing, backed up and struck a car stopped behind him, the Federal court ruled that the deposition established both the truck driver's negligence and the absence of contribu-

tory negligence of the driver in the rear, and hence warranted a summary judgment as to liability: Elasky v. Pennsylvania Railroad Company, 215 F.Supp. 25 (E.D. Ohio 1962).

Those citations illustrate the interpretation by Federal courts of Federal rule 56(c). In view of the similarity of our own rule 1035(b) to 56(c), and of the derivation of our State rule from its Federal predecessor, we are fully justified in regarding the Federal cases as precedents for our own action.

We conceive the possibility of some doubt. A Federal court has declared: "We have consistently held that summary judgment is appropriate where, had the case gone to trial, a directed verdict would have been required": Chambers v. United States of America, 357 F.2d 224, 227 (C.A. 8, 1966). We do not know of any Pennsylvania case in which a trial judge has directed a verdict for a plaintiff on the ground of clear negligence. We know that the general practice has been to leave both negligence and contributory negligence to the jury.

On the other hand, that was the situation as it existed before 1966. The adoption of rule 1035 in that year, in our judgment, has changed the picture. We need not decide specifically whether at a trial we would be justified in directing a verdict for plaintiff, or whether we may grant a pretrial judgment only where we would direct such a verdict. We may limit ourselves to deciding whether in the instant case such a pretrial judgment is possible. In view of the language of rule 1035 itself, we believe it is. The rule says clearly, in paragraph (a), that "any party may move for summary judgment." "Any party" certainly means plaintiff as well as defendant. Furthermore, though the rule was adopted for assumpsit actions, our Supreme Court manifestly regards it as governing trespass actions likewise. Beyond question, the Fed-

eral rule from which it was derived applies to plaintiffs as well as to defendants, and to trespass cases as well as to assumpsit.

In the instant case defendant's own testimony establishes beyond doubt that he was negligent, and that his negligence was the proximate cause of plaintiff's injury. Even if conceivably any negligence of plaintiff's driver could be attributed to plaintiff herself, as normally it could not, the record is bare of the slightest suggestion of contributory negligence. Under rule 1035, defendant had the opportunity to take the depositions of plaintiff and her driver, or to file supporting affidavits as to any possible defense. Defendant did not choose to avail himself of those rights. His failure to file an answer to the complaint, of course, still left open the defense of lack of his negligence and existence of contributory negligence; but his deposition closed that door.

On the record as it stands, we enter the following:

## ORDER

And now, to wit, March 6, 1969, it is ordered that plaintiff's motion for a summary judgment in the above entitled case be and the same is hereby granted, and judgment is hereby entered against defendant, William Kaufmann, in favor of plaintiff, Thelma Sharp Allen, on the issue of liability, leaving the suit to be tried only as to the amount of plaintiff's damages, if any.